**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| William D. Weaver,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>Michael J. Astrue, Commissioner of Social Security,<br><br>　　　　Defendant. | No. CIV 08-264-TUC-RCC (GEE)<br><br>**REPORT AND RECOMMENDATION** |

The plaintiff filed this action for review of the final decision of the Commissioner for Social Security pursuant to 42 U.S.C. §405(g) and 42 U.S.C. § 1383(c)(3). The case has been referred to the United States Magistrate Judge pursuant to the Rules of Practice of this court.

Pending before the court is a motion for summary judgment filed by the plaintiff on August 1, 2008, and a cross-motion for summary judgment filed by the defendant on September 2, 2008. [docs. #8, 10]

The Magistrate Judge recommends that the District Court, after its independent review, grant the plaintiff's motion for summary judgment, deny the defendant's cross-motion, and remand for further proceedings. The Commissioner's analysis of Weaver's mental impairments is not supported by substantial evidence.

PROCEDURAL HISTORY

On January 13, 2006, Weaver filed an application for disability insurance benefits. (Tr. 73, 74). He alleges disability beginning on October 15, 2000, due to "back injury, bi-polar, migraines." (Tr. 28, 263). His claims were denied initially (Tr. 105-08) and upon reconsideration. (Tr. 109-12). Weaver requested review and appeared with counsel at a hearing before Administrative Law Judge (ALJ) Lauren R. Mathon on July 13, 2007. (Tr. 15-21, 34). In her decision, dated August 23, 2007, the ALJ found Weaver was not disabled. (Tr. 28-35). Weaver appealed and submitted additional evidence, but the Appeals Council denied review making the decision of the ALJ the final decision of the Commissioner. (Tr. 4-8); *Bass v. Social Sec. Admin.*, 872 F.2d 832, 833 (9th Cir. 1989).

Weaver subsequently filed the instant complaint appealing the Commissioner's final decision. *See* 20 C.F.R. § 422.210(a). He filed the instant motion for summary judgment on August 1, 2008. The Commissioner filed the instant cross-motion for summary judgment on September 2, 2008.

Claimant's Work History and Medical History

From 1997 to 2000, Weaver worked as a tow truck driver and an insurance company adjuster. (Tr. 264). He injured his back in October of 2000, attempting to repossess a vehicle. (Tr. 44). He had surgery, but he still has pain in his back and legs. (Tr. 45). The accident apparently triggered an increase in his migraine headaches and other psychological symptoms. (Tr. 47). He claims he is disabled due to a combination of physical and psychological impairments. (Tr. 45-49).

Weaver claims an onset disability date of October 15, 2000. (Tr. 28). His last insured date is December 31, 2002. (Tr. 28). To be eligible for benefits, he must establish a disability onset between these two dates. (Tr. 28).

Weaver injured his back lifting an ATV off a truck in October of 2000. (Tr. 701). On December 14, 2000, he had back surgery to correct "massive disk herniation at L4-5." (Tr. 706). The surgery was largely successful, but Weaver was left with some residual back and leg

pain. (Tr. 411, 419). His surgeon, Thomas B. Scully, M.D., warned Weaver he probably would have to change careers as he would no longer be able to drive and operate heavy equipment as he had done before. (Tr. 419).

Shortly after his surgery, Weaver began to experience an increase in his migraine headaches and mental health problems. His first psychological admission occurred in September of 2001, when Tucson Police officers took him to the emergency room for "voicing suicidal ideation without a plan because of his violent moods. . . ." (Tr. 390). At the time of his discharge three days later, Amonon I. Kahane, M.D., gave the following diagnostic impression: "Axis I: Major depressive disorder, moderate; Learning disorder not otherwise specified; Axis II: Rule out borderline intellectual functioning; Axis III: Rule out fetal alcohol syndrome, Status post surgery for herniated lumbar disk; Axis IV: Problems related to primary support group and finances; Axis V: GAF: currently 36; highest in the past year, 55. (Tr. 392).

Rainjer Diaz, M.D., evaluated Weaver in October of 2001 for COPE behavior services. (Tr. 434). Diaz diagnosed: "Axis I, Mood disorder NOS, Rule out psychotic disorder NOS, Rule out bipolar I disorder with psychosis; Axis II, Rule out borderline intellectual functioning; Axis III, Status post surgery for herniated disk; Axis IV, homeless, no support system, pending divorce; Axis V, GAF about 48." (Tr. 435).

In April of 2002, Weaver was examined by Rinly R. Gecosala, M.D., M.P.H., for the Department of Economic Security (DES). (Tr. 425). Weaver reported chronic low back pain, depression, and migraine headaches. (Tr. 425-26). Gecosala opined Weaver could lift 20 pounds occasionally and 10 pounds frequently. (Tr. 427). He had problems with bending and stooping because of low back pain. *Id.* He could stand for 2 hours with breaks every 1/2 hour and sit for 2 hours with breaks every 1/2 hour. *Id.*

In July of 2002, Weaver was examined by David R. Siegel, M.D., for the DES Disability Determination Services. (Tr. 701). Siegel opined Weaver could perform "work-related activities such as sitting, standing and walking with allowance for frequent changes in position." (Tr. 703). He found Weaver should not perform repetitive bending or lifting and lifting should

1 be limited to 30 pounds. (Tr. 703). Siegel did not evaluate limitations caused by Weaver's
2 history of psychiatric illness. *Id.*

3     In July of 2002, a non-examining state agency physician, Jerome C. Rothbaum, M.D.,
4 reviewed the medical records and completed a Physical Residual Functional Capacity
5 Assessment form. (Tr. 81, 685-92). He found Weaver could lift 30 pounds occasionally and
6 10 pounds frequently. *Id.* He could stand and/or walk for a total of about 6 hours in an 8-hour
7 workday. *Id.* He could sit for a total of about 6 hours in an 8-hour workday. *Id.*

8     In May of 2004, a non-examining state agency physician, John Hayden, M.D., reviewed
9 the medical records and completed a Physical Residual Functional Capacity Assessment form.
10 (Tr. 77, 673-80). He found Weaver could lift 20 pounds occasionally and 10 pounds frequently.
11 *Id.* He could stand and/or walk for a total of at least 2 hours in an 8-hour workday. *Id.* He
12 could sit for a total of about 6 hours in an 8-hour workday. *Id.* He should never climb ladders,
13 ropes or scaffolds. *Id.* He should only occasionally climb ramps or stairs, balance, kneel, crouch
14 or crawl. *Id.*

15     In June of 2002, a non-examining state agency psychologist, Paul Tangeman, Ph.D.,
16 reviewed the medical records and completed a Psychiatric Review Technique form. (Tr. 659-
17 72). He assessed severe impairments: affective disorder and mental retardation. *Id.* He opined
18 Weaver was moderately limited in "maintaining concentration, persistence, or pace." *Id.* He
19 was mildly limited in his "restriction on activities of daily living" and "difficulties in
20 maintaining social functioning." *Id.*

21     In June of 2002, Tangeman also completed a Residual Functional Capacity Assessment
22 form. (Tr. 693-96). He found Weaver moderately limited in his "ability to understand and
23 remember detailed instructions," "ability to carry out detailed instructions," and "ability to
24 maintain attention and concentration for extended periods." *Id.*

25     In May of 2004, the non-examining state agency psychologist, Paul Tangeman, Ph. D.,
26 again reviewed the medical records and completed a Psychiatric Review Technique form. (Tr.
27 631-44). He assessed a severe impairment: affective disorder. *Id.* He opined Weaver was
28 moderately limited in "maintaining concentration, persistence, or pace" and "difficulties in

maintaining social functioning." *Id.*   He was mildly limited in his "restriction on activities of daily living."

In May of 2004, Tangeman also completed a Residual Functional Capacity Assessment form. (Tr. 681-84). He found Weaver moderately limited in his "ability to maintain attention and concentration for extended periods," "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms . . . ," "ability to interact appropriately with the general public," ability to accept instructions and respond appropriately to criticism from supervisors," "ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes," "ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness, and ability to respond appropriately to changes in the work setting." *Id.*

In October of 2004, a non-examining state agency psychologist, Hubert R. Estes, M.D., reviewed the medical records and completed a Psychiatric Review Technique form. (Tr. 645-58). He assessed affective disorder but found it not severe. *Id.* He opined Weaver was mildly limited in "maintaining concentration, persistence, or pace," "difficulties in maintaining social functioning," and his "restriction on activities of daily living." *Id.*

In October of 2006, a non-examining state agency psychologist, Stephen Bailey, reviewed the medical records and completed a Psychiatric Review Technique form. (Tr. 74, 612-25). He assessed a psychotic disorder (NOS) and an affective disorder (bipolar syndrome). *Id.* He opined Weaver was markedly limited in "maintaining concentration, persistence, or pace," moderately limited in "maintaining concentration, persistence, or pace," and experienced one or two "episodes of decompensation, each of extended duration." *Id.*

Bailey also completed a Mental Residual Functional Capacity Assessment form. (Tr. 626-29). He found Weaver markedly limited in his "ability to understand and remember detailed instruction," and "ability to maintain attention and concentration for extended periods." *Id.*

On July 13, 2007, Weaver appeared with counsel at a hearing before ALJ Lauren Mathon. (Tr. 41). Weaver explained he hurt his back while repossessing a vehicle. (Tr. 44).

1  He had surgery, but he still has pain in his back and legs. (Tr. 45). Weaver reported he suffers
2  from migraine headaches approximately three times per week. (Tr. 47).

3  Weaver testified he suffers from psychological problems as well. (Tr. 47). He has
4  trouble concentrating and coping with changes in his routine. (Tr. 48). He also has problems
5  interacting with persons in authority or accepting criticism. (Tr. 48-49).

6  Weaver shares a house with an older woman. (Tr. 51-52). He drives her to doctors and
7  does the grocery shopping. (Tr. 52). He does the laundry and takes out the trash. (Tr. 54).

8  In November of 2007, Thomas R. McCabe, Ph.D., and Denny L. Peck, Ph.D., conducted
9  clinical interviews and psychometric testing on Weaver.[1] (Plaintiff's motion for summary
10 judgment, Documents.) In their report on Weaver's mental and psychological condition, they
11 concluded Weaver has long standing cognitive and developmental impairments. *Id.* He was
12 born premature after only six months gestation and has a full scale IQ of 71. *Id.* He meets the
13 guidelines for bi-polar and psychotic disorder. *Id.*

14 McCabe and Peck also completed a Psychiatric Review Technique form. *Id.* They
15 concluded Weaver meets the listing for organic mental disorders; schizophrenic, paranoid and
16 other psychotic disorders; and affective disorders. *Id.* They opined Weaver was extremely
17 limited in "maintaining concentration, persistence, or pace," "difficulties in maintaining social
18 functioning," and "episodes of decompensation, each of extended duration." *Id.* He was
19 markedly limited in his "restriction on activities of daily living." *Id.*

20 McCabe and Peck completed a mental work tolerance recommendation form. *Id.* They
21 found Weaver was markedly limited in several activities related to "understanding and
22 memory," "concentration and persistence," "social interaction," and "adaptation." *Id.*

23
24 CLAIM EVALUATION

---

[1] "Because this evidence was submitted to and considered by the Appeals Council, and is part of the administrative record, this Court may consider it in reaching its final decision even though the ALJ did not have the benefit of this information during the initial application hearing." *Vasquez v. Astrue*, ___ F.3d ___, ___, 2008 WL 4791860, 6 n. 7 (9th Cir. 2008); see also (Tr. 8).

Social Security Administration (SSA) regulations require that disability claims be evaluated pursuant to a five-step sequential process. 20 C.F.R. §§ 404.1520, 416.920; *Baxter v. Sullivan,* 923 F.2d 1391, 1395 (9th Cir. 1991). The first step requires a determination of whether the claimant is engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If so, then the claimant is not disabled, and benefits are denied. *Id.* If the claimant is not engaged in substantial gainful activity, the ALJ proceeds to step two which requires a determination of whether the claimant has a "medically severe impairment or combination of impairments." 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

In making a determination at step two, the ALJ uses medical evidence to consider whether the claimant's impairment more than minimally limits or restricts his or her "physical or mental ability to do basic work activities." *Id.* If the ALJ concludes the impairment is not severe, the claim is denied. *Id.* Upon a finding of severity, the ALJ proceeds to step three which requires a determination of whether the impairment meets or equals one of several listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); 20 C.F.R. Pt. 404, Subpt. P, App.1. If the claimant's impairment meets or equals one of the listed impairments, then the claimant is presumed to be disabled, and no further inquiry is necessary. *Ramirez v Shalala,* 8 F.3d 1449, 1452 (9th Cir. 1993). If the claimant's impairment does not meet or equal a listed impairment, evaluation proceeds to the next step.

The fourth step requires the ALJ to consider whether the claimant has sufficient residual functional capacity[2] (RFC) to perform past work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If the ALJ concludes the claimant has sufficient RFC, then the claim is denied. *Id*. If the claimant cannot perform any past work, then the ALJ must move to the fifth step which requires consideration of the claimant's RFC to perform other substantial gainful work in the national

---

[2] Residual functional capacity is defined as that which an individual can still do despite his or her limitations. 20 C.F.R. §§ 404.1545, 416.945.

economy in view of claimant's age, education and work experience. 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4).

In determining whether the claimant retains the ability to perform other work, the ALJ may refer to the Medical Vocational Guidelines ("the grids") promulgated by the SSA. *See* 20 C.F.R. Pt. 404, Subpt. P, App.2; *Desrosiers v. Secretary of Health and Human Services,* 846 F.2d 573, 576-577 (9th Cir. 1988). The grids categorize jobs according to their exertional requirements such as sedentary work, light work, or medium work. *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999). The grids calculate whether or not the claimant is disabled based on the claimant's exertional ability, age, education, and work experience. *Id.* The grids are a valid basis for denying claims where they completely and accurately describe the claimant's abilities and limitations. *Id.* at 1101-02. If the claimant has only exertional limitations, the claim may be resolved based only on the grids. *Lounsburry v. Barnhart*, 468 F.3d 1111, 1115 (9th Cir. 2006).

If the claimant has significant non-exertional limitations, the grids do not apply. *Penny v. Sullivan,* 2 F.3d 953, 958-959 (9th Cir.1993). "Non-exertional limitations are limitations that do not directly affect a claimant's strength." *Burkhart v. Bowen*, 856 F.2d 1335, 1340 (9th Cir. 1988). Mental limitations, for example, are non-exertional. *Id.* at 1340-41. If significant non-exertional limitations prevent the claimant from performing the full range of work in any exertional category, the ALJ must take the testimony of a vocational expert to deny the claim. *Id.* at 1341.

If the claimant has both exertional and non-exertional limitations, the ALJ must consult the grids first before considering the testimony of a vocational expert. *Id.* If the grids direct a finding of disability, that finding must be adopted by the Commissioner. *Lounsburry,* 468 F.3d at 1116.

### The ALJ's Findings

At step one of the disability analysis, the ALJ found Weaver "did not engage in substantial gainful activity during the period from his amended alleged onset date through his

- 8 -

date last insured of December 31, 2002 . . . ." (Tr. 30). At step two, she found Weaver had "the following severe combination of impairments: status post back surgery, depressive and bipolar disorders . . . ." *Id.* Analyzing Weaver's psychological condition in isolation, the ALJ concluded Weaver's "impairment of depression and bipolar disorder . . . is . . nonsevere." At step three, the ALJ found Weaver's impairments did not meet or equal the criteria for any impairment found in the Listing of Impairments, Appendix 1, Subpart P, of 20 C.F.R., Part 404. *Id.* The ALJ then analyzed Weaver's residual functional capacity (RFC). (Tr. 33). She found Weaver could perform the full range of light work. *Id.* At step four, the ALJ found Weaver could not perform his past relevant work as a tow truck driver. (Tr. 34). At step five, the ALJ employed the grids to find Weaver was not disabled. (Tr. 34).

### STANDARD OF REVIEW

An individual is entitled to disability benefits if he or she demonstrates, through medically acceptable clinical or laboratory standards, an inability to engage in substantial gainful activity due to a physical or mental impairment that can be expected to last for a continuous period of at least twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). "[A] claimant will be found disabled only if the impairment is so severe that, considering age, education, and work experience, that person cannot engage in any other kind of substantial gainful work which exists in the national economy." *Penny v. Sullivan,* 2 F.3d 953, 956 (9th Cir. 1993) (*quoting Marcia v. Sullivan,* 900 F.2d 172, 174 (9th Cir. 1990)).

The findings of the Commissioner are meant to be conclusive. 42 U.S.C. §§ 405(g), 1383(c)(3). The decision to deny benefits "should be upheld unless it contains legal error or is not supported by substantial evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* It is "more than a mere scintilla but less than a preponderance." *Id.*.

"Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Orn*, 495 F.3d at 630. "However, a reviewing court must consider

the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Id.*

In evaluating evidence to determine whether a claimant is disabled, the opinion of a treating physician is entitled to great weight. *Ramirez v. Shalala,* 8 F.3d 1449, 1453-54 (9th Cir. 1993). The Commissioner may reject a treating physician's uncontradicted opinion only if he sets forth clear and convincing reasons for doing so. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). If the treating physician's opinion is contradicted by another doctor, the Commissioner may reject that opinion only if he provides specific and legitimate reasons supported by substantial evidence in the record. *Lester,* 81 F.3d at 830. No distinction is drawn "between a medical opinion as to a physical condition and a medical opinion on the ultimate issue of disability." *Rodriguez v. Bowen*, 876 F.2d 759, 761 n.7 (9th Cir. 1989).

"The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a non[-]examining physician." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). "[T]he Commissioner must provide 'clear and convincing' reasons for rejecting the uncontradicted opinion of an examining physician." *Id.* "[T]he opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* at 830-31.

"Where medical reports are inconclusive, questions of credibility and resolution of conflicts in the testimony are functions solely of the [Commissioner]." *Magallanes,* 881 F.2d 747, 751 (9th Cir. 1989) (punctuation omitted). The Commissioner's finding that a claimant is less than credible, however, must have some support in the record. *See Light v. Social Security Administration,* 119 F.3d 789 (9th Cir. 1997).

The ALJ need not accept the claimant's subjective testimony of disability, but if he decides to reject it, "[he] must provide specific, cogent reasons for the disbelief." *Lester,* 81 F.3d at 834. "Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." *Id.* "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.*

- 10 -

## DISCUSSION

The decision of the ALJ should be set aside. She failed to properly evaluate Weaver's mental impairments.

The ALJ concluded Weaver's mental impairments were not severe based on the report of the state agency psychiatrist, Hubert R. Estes, M.D.[3] (Tr. 31, 655). Estes found Weaver was only *mildly* limited in "maintaining concentration, persistence, or pace," "difficulties in maintaining social functioning," and his "restriction on activities of daily living." *Id.* Accordingly, he concluded that while Weaver had an affective disorder, it was not severe. (Tr. 645-58). The ALJ accepted Estes opinion and concluded at step two of the analysis that Weaver had no severe mental impairments.

The ALJ, however, did not discuss the reports of the state agency psychologists, Tangeman and Bailey, who concluded, to the contrary, that Weaver had a severe psychological impairment. (Tr. 631-44, 681-84, 74, 612-25, 626-29). Tangeman found Weaver was *moderately* limited in "maintaining concentration, persistence, or pace" and "difficulties in maintaining social functioning." (Tr. 631-44). He concluded Weaver's affective disorder was a severe impairment. *Id.* Bailey found Weaver was *markedly* limited in "maintaining concentration, persistence, or pace," "difficulties in maintaining social functioning," and in his "restriction on activities of daily living." (Tr. 612-25). He concluded Weaver had severe impairments: psychotic disorder and affective disorder. *Id.* These two medical opinions contradict Estes' opinion, which was adopted by the ALJ.

The regulations explain that the Commissioner and his representatives "will evaluate every medical opinion we receive." 20 C.F.R. § 404.1527 (d); *see also Shafer v. Astrue*, 518 F.3d 1067, 1069 (9th Cir. 2008). The ALJ, however, did not discuss the medical opinions of

---

[3] The ALJ did not cite Estes' report by name, but adopted completely his rating of functional limitations. (Tr. 655).

- 11 -

1 Tangeman and Bailey. Apparently, she did not evaluate all of the medical opinions in the
2 record as required by the regulations.

3 Moreover, the ALJ has a duty to resolve conflicts in the evidence. *Benton ex rel. Benton
4 v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003). "Where, as here, the record contains
5 conflicting medical evidence, the ALJ is charged with determining credibility and resolving the
6 conflict." *Id.* In this case, the medical opinions of Tangeman and Bailey contradict Estes'
7 opinion, which was adopted by the ALJ. The ALJ had a duty to explain why she adopted Estes'
8 opinion and rejected the others. This duty to resolve conflict cannot be discharged by ignoring
9 contrary opinion or rejecting contrary opinion without explanation. *See Fargnoli v. Massanari*,
10 247 F.3d 34, 41-42 (3rd Cir. 2001).

11 The ALJ did consider the contrary opinion of the treating psychiatrist, Rainjer Diaz,
12 M.D. Her analysis, however, was incomplete. The ALJ stated "[t]he residual functional
13 capacities set forth by treating psychiatrist Dr. Diaz is not entitled to controlling weight because
14 they are inconsistent with the claimant's high global assessment of functioning (GAF) scores
15 since March 2002 . . . ." (Tr. 33). Assuming this is a legitimate criticism, the ALJ still failed
16 to complete her analysis. The regulations explain that if the treating physician's opinion is not
17 given controlling weight, the ALJ must then consider how much weight to give the opinion
18 based on the examining relationship, the treatment relationship, supportability, consistency, and
19 specialization. 20 C.F.R. § 404.1527(d); *see also Orn v. Astrue*, 495 F.3d 625, 632-33 (9th Cir.
20 2007). This analysis was not done. The ALJ apparently assumed that if the opinion of the
21 treating physician is not given controlling weight it should be given no weight at all. This is
22 error. *See Orn v. Astrue*, 495 F.3d 625, 633 (9th Cir. 2007) ("In many cases, a treating source's
23 medical opinion will be entitled to the greatest weight and should be adopted, even if it does not
24 meet the test for controlling weight."); *Carpenter v. Astrue*, 537 F.3d 1264, 1270 (10th Cir.
25 2008). The ALJ's analysis of Weaver's mental impairments does not comport with the
26 governing regulations. On remand, the ALJ should analyze Weaver's mental impairments
27 explicitly considering all the medical opinions in the record.

28 The court expresses no opinion on the plaintiff's other claims of error.

- 12 -

RECOMMENDATION

For the foregoing reasons, the Magistrate Judge recommends that the District Court, after its independent review, grant the plaintiff's Motion for Summary Judgment, deny the defendant's Motion for Summary Judgment, and remand for further proceedings. [docs. #8, 10]

Pursuant to 28 U.S.C. § 636(b), any party may file and serve written objections within 10 days after being served with a copy of this Report and Recommendation. If objections are not timely filed, the party's right to de novo review may be waived. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc), *cert. denied*, 540 U.S. 900 (2003).

The Clerk of the Court is directed to send a copy of this Report and Recommendation to all parties.

DATED this 17th day of November, 2008.

_____
Glenda E. Edmonds
United States Magistrate Judge